We'll move to argument next in No. 21-1389, United States v. Chambers. Mr. Ring, whenever you're ready. Thank you. May it please the Court, good afternoon. I'd like to begin with the issue of the biased juror. This case presents an unusual, extremely unusual set of facts and circumstances in regard to events relating to the seating of a juror who, in essence, was acting surreptitiously on behalf of the government in different matters. We have a case where this particular juror, juror No. 18 The judge dismissed him. The juror didn't get near, didn't deliberate, didn't participate in any deliberations? That's correct, Your Honor. That is correct, Your Honor. But juror No. 18 vanished. Well, he was dismissed, Your Honor. I don't know whether he vanished, but he was not part of deliberations. Vanished from the jury. Yes. The concern that we have, Your Honor, is the potential for mischief, essentially, occurring in the jury room as a result of the fact I'm sorry, I didn't follow you. The concern you have is what? The potential for mischief, the potential for the juror to have said or done something while he was with his fellow jurors, given the nature Well, the judge asked him and he said he didn't say anything, right? That's true. The judge asked him, but he was an unreliable narrator in this circumstance, given the nature of the way that he answered questions during jury selection. And again, given the extreme bias and given the court's conclusion that he wouldn't be able to follow the instruction to act or in effect wouldn't be able to follow the instruction to be fair and impartial at the time of deliberation. But trial counsel got what he wanted. He got rid of 18. Your Honor, they also asked, trial counsel also asked for the jury to be polled and an inquiry to be made as to whether this extremely biased juror had done something that could have affected the jury. Potentially biased. Correct. Correct. And that is the argument, Your Honor, is that the potential He said that he didn't, and the district court thought that was credible, so why is that erroneous? I'm sorry, the district court Why is it like, I don't know, you can tell me what the standard is, but the district court made a determination that when the juror said he had not discussed it with the other jurors that that was credible. Right. So why should we not defer to the district court's determination since he saw the juror say that? So there's two reasons for that, Your Honor, and they relate to the basis for the district court's decision. What the district court said was, I'm not going to inquire further because the issue that led to the dismissal of the juror doesn't pertain to the juror's ability to follow instructions. That's wrong for two reasons. First of all, it bypasses the main issue that was before the court and the reason that the court did dismiss the juror, which was this extreme bias. And that, as I've already said, is exactly the point. When you have extreme bias, there should be a higher standard or there should be a higher threshold in regard to That's not contradictory, right? So the bias was because he had been working, he might have a bias in favor of the government because of something else that he was doing, but that doesn't indicate that he's not able to follow instructions with respect to how he interacts with the other jurors and so on. Those are not contradictory conclusions, are they? When somebody is extremely biased, it's risky to rely on that biased person's Well, that's the basis for your contention that he is extremely, that 18 was extremely biased. The government volunteered. When speaking ex parte to the court at sidebar, the government volunteered that it was its position that this juror would be, had an incentive to ask favorably to the government in deliberations. I mean, if that's not bias, I don't know what is. So the other reason why I'm concerned with the rationale that was offered by the district court Yeah, but what specifically is the reason why? So the district court obviously acknowledged that bias, that he'd be biased in favor of the government. But you're saying there's another kind of bias. There's like, the bias is so extreme that he would be compelled to start lobbying from day one among the other jurors about a particular, like, why, why should we? So the district court made a determination at the extent of the bias. So why is the, what's the evidence that the bias is even more extreme than the district court thought? So it relates to what's reasonable. And if you flip the facts around and you say, look, the defendant. It turns out that there's somebody seated on the jury that was employed by the defendant's uncle. And it comes to light during the course of the trial that you've got this guy on the jury who works for the defendant's uncle. And, in fact, knew that, knew at the time of jury selection, that the defendant was the nephew of the person he worked for. I mean, that's a circumstance where somebody has not raised with the district court during jury selection an issue that frankly should have been obvious. And there wouldn't be reason to be concerned as to what mischief, what could have happened in the jury room as a result of the fact that you have this extreme bias. There might be a legitimate concern if juror number 18 had stayed on the jury. But he didn't. He was gone. Fair enough. The point is, and what I draw upon, is this court's ruling. And I hope I'm saying it right. In Gaggi, the analogy is to a press case. When something is out there, there's a potential for extrinsic information to taint what's happening in the jury room. The court reasonably, and this court has held that it's reasonable, it's expected that the district court would inquire under those circumstances. And that's the only standard that I'm asking for here, is that when you have a situation where the bias is so extreme, and you have a situation where it is so questionable as to why the jury did not disclose this during jury selection, that it would have been reasonable and it would have been unreasonable not to inquire further of the jury. What was the request that you made exactly? What exactly did you ask the district court for? It wasn't me. But predecessor counsel requested that the jury be, I believe it was polled or individually canvassed in regard to this issue, exactly this issue. Can you read me the words? Can you read me the words, what you asked? My computer was taken away from me downstairs, so I don't have that. I believe it's in the record. But my understanding is that predecessor counsel asked for each jury, each juror to be polled. When you say polled with respect to this issue, what is that issue? Excuse me? When you say polled with respect to this issue, what is the issue? Whether the juror who was dismissed had made any extrinsic statements in the jury room. Okay. And I can, I'll. So you did not, so if that's, if you're correct as to what was asked for, you didn't ask to have the jury as a group, ask did anybody, did this juror talk to the other jurors about it? You asked for each juror to be polled. Yes. Predecessor counsel made that request. Thankfully, the government has come to my aid here and given me the transcript. And what predecessor counsel asked was the question to be asked of the individual members of the jury, have you had any conversations about this case with any other juror or with anyone? So I believe my prior answer was accurate. In regard to the second issue, the issue of the unbalanced jury instructions, again, we have an extremely. I'm still confused. Suppose the juror had told the other jurors, well, look, I've got other business with the government, and I'm working with them on another matter. How would that have biased the other 11 or 13 or how many other jurors there were? That's not my concern. My concern would be the juror would say something like, look, I work with the government and I know these guys. If they bring a case, they've got the goods. That's the type of comment that I would be concerned about. But this is entirely speculative. Right. The point that I'm making is there is a potential, given the nature of this juror's relationship with the government, and it would have been reasonable and, frankly, barely intrusive at all for the court to make simple inquiry. So normally we give the district court a lot of discretion on questions such as these. So how would we articulate the rule that the district court violated in this case that means that here we send it back because it's an error, but otherwise the district court has a lot of discretion? It would be narrow to this case. When the facts and circumstances are such and so unusual that you have a juror who is extremely biased in favor of the government, again, the government's own words to the court, he had incentive to favor the government in deliberations. Under those circumstances, it's not enough to rely on that witness's attestation as to what did or didn't happen in the jury room and further inquiry should have occurred. It's not congruent with extremely biased. You just said different things. That's my characterization, Your Honor. In my view, this is somebody I clearly would not have wanted on the jury, and I would not have wanted on the jury in an extreme way. Okay. Well, I think we have that argument. You wanted to say something about the second issue. Yes, and just briefly because I have reserved and I see that I'm out of time. In this case, again, extremely unusual factual circumstance. You have a situation where the court essentially told government counsel that in regard to this evidentiary issue that came up at the last minute in trial that the court would allow government counsel to argue evidence in a certain way, essentially to argue pattern evidence in order to prove what were the critical essentials for the jury to determine in deliberations, whether Mr. Chambers had knowledge or intent as to what his colleague was doing. The government, out of caution, given the unique circumstances of this case, there hadn't been a 404B notice. There hadn't been an allegation of conspiracy. This issue came up at the last minute. The government, out of caution and perhaps appropriately, chose not to argue pattern to the jury. It was very evident from the government's argument that that was the position it was taking, and in fact in post-trial briefing the government was explicit and the court at the time was explicit in observing that the government had refrained from making that argument. The jury asked a question as to whether evidence could be used in this certain way, meaning whether pattern evidence could be used across the crimes, and the court gave a very narrow response to the question, which essentially said you can't use it for this reason, and the implication is you could use it for other reasons, including the reason that the jury actually inquired about. Can we use pattern evidence in our deliberations? Well, the jury asked, like, can we notice the fact that his car was present at another one of the crimes, right? That was the example they used. Yes, Your Honor. Is that pattern evidence? I believe it is. They didn't ask, you know, if we find he owned the car, you know, do we have to tie that to one count. It was if the car is at the scene of multiple events. But the crimes could be totally dissimilar. They might not be a pattern, and the jury might notice that the crime was at one. Sorry, the car was at one crime. I mean, it's not about being pattern, is it? I'm not, I mean, what the note says is, and I'm quoting from it here, or I'm quoting from part of it, as an example, if his car appears to be, excuse me, appears at more than one event, can we use that information during our deliberations? We ask because there is a repetitive pattern, but we want to judge each count separately. Note that that last statement, we want to judge each count separately, is because of the way the jury had been previously charged. So by coming back and effectively saying you can use this pattern evidence, the court shifted the nature of how this evidence could and would be used. It's actually acquitted of two of the counts, right? Correct, and those were the counts where there was no evidence, well, there was no camera evidence of him being present at the scenes, which reinforces the notion that if he was at the scene, it fell into, you know, this pattern of activity, the pattern of behavior. But whether there's camera evidence showing him at the scene is not the pattern. The pattern would be, it would be pattern evidence if it's the similarity between events, right? Look, I don't know, in all honesty, Your Honor, I don't know what to make of the two acquittals. We can speculate as to that. I'm not sure it makes sense. I guess it doesn't undermine the idea that the jury just decided, well, I see evidence for one event and therefore I'm going to convict him on all of them. That's not my argument. My argument isn't that, you know, guilty as to one, guilty as to all. I don't think that that's what the jurors, excuse me, the court's instruction invited. The court's instruction invited a use of pattern evidence in order to prove knowledge and intent, and that was a use that, you know, up to that point hadn't been applied, and that's what made it unfair for the defendant. You don't really talk about pattern evidence. You talk about other acts that aren't charged, right? Well, they were charged, and so, you know, it's that. I guess I'm asking, doesn't that make this different? I mean, the government is charging him with all of these crimes, right? So that's not the normal case where we're worried about pattern evidence. Well, it is the normal direct evidence case as opposed to the 404B pattern case, and the government I think did a good job in its brief of delineating the various types of pattern activity that could be used at trial, and the first two are 404B, and this is I think the example that you were alluding to. You have uncharged conduct, and you say, look, or you argue proof of knowledge and intent because, you know, look at all these things he did. It was part of a continuing scheme. The same rationale can apply if it's charged conduct, but the charged conduct is separate charged conduct. The same rationale can apply, but do we? Has it been applied? Do we have cases where we have applied it? Yeah, and that's what the court here said that it would allow and would do, and so what makes this case unusual is there's ‑‑ Excuse me. I'm sorry. If you have ‑‑ if there are counts separating one count from another, if there are counts in which there isn't sufficient evidence to link your defendant to the commission of the robbery that was committed by the other person, then the jury would be required to acquit on that count, and you could argue to the district court and to us that there was insufficient evidence on that count. So each of these counts, there was ‑‑ each of the counts of conviction, there was evidence of his participation in that count. Correct. And if there was further evidence, if there was evidence from other counts showing his knowledge and his awareness of the scheme, why would that not be admissible with respect to the other counts as to which there was independent and evident participation? And the issue is whether he was knowingly participating. Why is it forbidden for the jury? Why is the answer to the question that you're raising not that the government could properly have argued that his participation in other counts could be used by the jury to support the evidence of knowledge and intent? Yes, Your Honor. And as I think the court's question suggests, the key issue for the jury here is what Mr. Chambers knew and intended at the time that he was at these crime scenes and dropped off his brother or the other individual who was involved. And so the sole issue is what he understood or believed to be occurring. And it's one thing, you know, you drop somebody off a hundred times, you drop somebody off one time, you know, that has an effect or it can have an effect if you're arguing pattern. You know, look, there's a hundred robberies. One time is not a pattern. One time is not a pattern, exactly. And so here, the argument was available to the government. The government chose not to make the argument. The court chose not to, because the government didn't ask it to, chose not to provide an instruction that would have said, hey, here's how you can use pattern evidence in an appropriate way. The jury understood those instructions to mean, I think, given the nature of its note, it understood those instructions to mean that it couldn't apply pattern evidence because it was evidence of one count against another. And the court then essentially green-lighted the use of evidence in a way that it had not previously instructed the jury on. But you seem to be implying in your argument that because the government didn't explicitly argue ways in which the jury could have used evidence from one count across another count on the issue of knowledge and intent, that that use was barred from the case. But the rules of evidence allow that kind of use for knowledge and intent. The government doesn't have to argue it for the evidence to be admissible for that purpose. My argument is slightly different than that. And the argument is the court gave an instruction that the jury interpreted, I think fairly, to mean that it couldn't use this evidence in this way. So the government, the jury asked a question. Correct. Correct. Up to the point in time that the jury asked the question, the court had been silent on this issue explicitly but had advised the jury to consider each count separately. The court said consider each count separately and don't infer that he has a propensity, right, to get his character evidence, and that's appropriate, right? Right. So really the essence of the argument is that by responding in the way that the court did, it shifted how evidence could be viewed by the jury, and it shifted evidence in a way that was different from the way the court previously instructed the jury and therefore deprived the defendant. Does the court actually respond to the jury by reiterating the point about not finding him guilty because of a propensity and also considering each count independently? That's also accurate. Yes. But what I would add is what the court said explicitly in regard to this pattern issue is with respect to your and I'm quoting, by the way, with respect to your inquiry regarding a perceived pattern, you must not base your verdict on any perception that you may have that Mr. Chambers is a bad character or propensity. So it basically said in regard to your question regarding propensity, you cannot do X. The implication is you can do anything other than X in regard to this evidence, and that's the nature of my concern. Thank you. Okay. Thank you very much, Mr. Ring. We'll hear from you again on rebuttal. Ms. Katsanis. Katsanis, I'm sorry. That's okay. Good morning. May it please the court, my name is Jocelyn Courtney Katsanis, and I represent the United States of America on this appeal. With regard to the first issue, the district court did not abuse its discretion when it dismissed juror 18 on the morning of the third day of trial, days before deliberations commenced, without specifically inquiring as to the other jurors whether they had spoken to juror 18 about the case. As your Honor's questions alluded to, there was absolutely no evidence that there had been any discussion about the case. The district court had the opportunity to acquire a government counsel once on the record with defense counsel and in an ex parte communication about what had transpired, the government represented. There had been no such communications. The district court had given a preliminary instruction when the jury was initially sworn not to talk about the case. The district court proceeded to give an instruction at the close of evidence every day for the jurors not to talk about the case. No other juror ever said that there had been any discussion about the case. But the possible discussions in question didn't necessarily pertain to the case on trial. It was the possible disposition that juror 18 had to take the jury for. Your Honor, I think that the claim that defense counsel just raised as to the type of conversation that he was concerned about was a conversation where the juror said something like, I know that when the government brings a case, I know that they're bringing a good case or something like that, which would have been about the case. So I think the instructions also, which if you look back at the record, are Joint Appendix 193, 1273, 773. The district court is broadly saying there should not be any discussion about anything having to do with the case. And then the way that this transpires is the juror is brought in, the district court has the opportunity to observe his demeanor. He twice on the record says he never talked to any other juror about the case at all, any conversation. The trial continues that day, and it's not until three days later or the fourth day, again after the jury has been instructed not to talk about the case, that there's this request that the entire jury be polled individually as to whether there's been discussions about the case. So the district court, when viewed with this entire record, having the position of being in the courtroom, observing the jurors, having observed Juror 18, juroring Boisdier, having personally spoken to government counsel in these two conversations, there's just no evidence that there was any sort of abuse of discretion to dismiss the juror without specifically inquiring. And again, the juror is dismissed. The dismissal occurred how long after the jury was sworn? So the jury is sworn in on March 6th. There's one full day of trial. At that point, the government, for the first time, learns about this. March 7th is the second full day of trial. The government tells the court at the evening of March 7th what's going on. March 8th, the juror is dismissed. March 19th, they return a verdict. So it's two full trial days, but over a week before the case is concluded. And what was the date on which counsel asked to have each juror polled? March 12th, Your Honor. Because there was a break after. So the juror is dismissed on March 8th. Trial continues for that third day. Then there's a break of three days. And then the jury comes back, and the request is made at that point. With regards to defense counsel's point, both in his brief and on appeal about U.S. v. Gaggi, and the press cases out there, this case is substantively different from those cases because those cases involve some information that is in the public realm. Some piece of information. Here, there's never an allegation, even now, that Juror 18 said anything. It's just the potential that he could have been biased, that he could have said something. Gaggi, where there's two instances of a death, high-profile death, and the district court is conducting inquiry of the jury, there's an allegation that there's some information out there that the jury might have been exposed to, which is simply not the case here. So, again, with all of that in mind, there's just no evidence of any abuse of discretion in the way that the district court handled this matter. With regards to the second point, as part of your point, that by waiting, by allowing the trial to go ahead and be completed and a verdict to be returned, counsel, that he would have been on a much better footing to ask the question when the issue was pertinent, when the juror's participation was before the court and the court decided to dismiss the juror. Yes, Your Honor. If you're asking whether, had this juror stayed in the case and deliberated, I think this would be an entirely different issue. No, no, my question is different. My question is different from that, yes. My question is, counsel, before asking for this, allowed the court to invest a lot of time. I mean, if, for example, the result of asking such a question, supposing hypothetically that asking those questions would have revealed that the juror, contrary to what he said to the court, had talked to the jury about the case and said, oh, that defendant looks guilty to me and I know that the government doesn't bring suits of this nature unless they have the goods on the person and I think he's guilty. I mean, supposing that a question asked at the time that the issue was raised about the jury, the court could then have determined that not only should this juror be dismissed, but the whole jury panel should be dismissed and we should start over again. But instead, he waited for several days after for all the rest of the case to proceed and a verdict to be obtained, and the verdict was against him. And only after that, several days later, did he ask for this question. And it's too late. Whatever the merits of your request were at the time that the jury issue was before the court, you should have asked it then rather than having the court invest a whole lot of time in having the whole case progress to the defendant, having the government's entire case revealed to the defense as a do-over rather than do it when it was pertinent. Your Honor, perhaps I confused, Your Honor, with the way I responded to the question. So the juror is dismissed on March 8th. On March 12th, so that's before the verdict is returned. The defense counsel requests that the jurors be individually polled. Okay, but so it was before the verdict, but it was after the whole trial. The trial was still ongoing. There was one full trial. That's a considerable portion of it. It was after. How much more of trial progressed? So it was after three full days of trial, and the trial continued until March 19th. So it was maybe a little less than halfway, around halfway through the trial. Okay. All right. Thank you. But again, I mean, the district court, as the cases have said, just to finish this point, the district court has the discretion because of its role in running trials to conduct inquiry in the way that it did so here was appropriate. As to the second point, the district court received a question from the jury to which it responded by referring back to its original instruction. As defense counsel stated at the time in which the supplemental note was given, that instruction was legally correct. The only thing the defense counsel had requested was an additional line further instructing the jury not to consider evidence that Mr. Chambers had committed one robbery as proof that he had committed another. The district court was disinclined to give that instruction, as the district court made clear, because the government had not argued this case as a case in which the robberies were inextricably linked. So the district court did not want to give a legally incorrect instruction. So the district court, Judge Dooley believed that what the defense was requesting was legally incorrect. And it stayed silent because it did not want to instruct the jury on something that the government had not actually argued. The supplemental instruction basically just referred the jury back to the earlier instruction, and it made clear, as is the case under the law, that the jury could not consider the evidence for propensity purposes, and that it had to deliberate on each count individually. I think it's also important to note that... It would be legally incorrect because it didn't match the government's argument? No. What the defense counsel was requesting, the district court said, would be legally incorrect. The district court did not want to go so far as to instruct the jury that you could consider evidence as inextricably linked, because the government hadn't argued that.  And the jury's note suggests that they're considering each count individually because they say, we want to consider each count individually. So it's not legally incorrect. There's a new argument by defense counsel on appeal that it's a shift in the government's theory of the case. For that, there's a reliance upon cases like United States v. San Juan, where you have a situation where the government argues that a crime occurred on a bus. And then at trial, the district court suggests to the jury that they could find that the crime occurred in a customs house. There's such a shift in the government's theory of the case. Here, there was no shift in the government's theory of the case. From the beginning, it argued the evidence as to each robbery and marshaled the evidence as to each robbery. And in the closing argument... But the jury's question indicates that the jury's looking at evidence of one robbery to decide guilt on the other robbery. Right? Like the presence of the car at one robbery might indicate that he also did the other robbery. Would it be appropriate for the jury to do that? Your Honor, I think the jury's note indicates that it's considering evidence that's directly relevant to more than one robbery, which both defense counsel and the government agreed would be appropriate. There was testimony in this case, like the cell site evidence... You're saying it is appropriate. So it would be appropriate for the jury to say, well, his car was seen at the one robbery, the other robbery. Therefore, it's more likely that he committed the other robbery. That's probative evidence? So I think there's two points that are important to distinguish. There's evidence that's directly relevant to more than one robbery. So there's the fact that there was a cell site expert who testified that his phone was at more than one robbery. There's the evidence that his car was a champagne-colored Nissan Maxima and that car appeared at more than one robbery. Then there's the argument that these robberies should be considered as inextricably linked and you should look at all of them together and see them as a pattern. The government did not argue that. However, under the law that the district court referred to that appears in the district court's opinion and as we cite to in our brief, that is an appropriate use of the evidence. So if your honors have no further questions, for all of these reasons, we would ask that you affirm the district court's decision. Thank you. Thank you, Ms. Katsunis. We'll hear back from Mr. Ring on rebuttal. Thank you, your honor. I think I've addressed my arguments in full. So unless the court has any questions, I'll rely on my previous argument. Okay. Thank you. Thank you very much. The case is submitted.